CANYON CREEK IRRIGATION DISTRICT, RESPONDENT, *v.* MARTIN, APPELLANT.

(No. 3,656.)

(Submitted March 31, 1916.    Decided May 8, 1916.)

[159 Pac. 418.]

*Injunction—Corporations—Sale of Assets—Stockholder's Suit— Estoppel—Laches—Notice.*

Corporations—Injunction—Stockholder's Suit—Estoppel—Laches.
    1. A stockholder in a reservoir company, a corporation organized for profit, with power to sell its assets upon a proper vote, who, upon a sale having been made, took no timely steps to assail its legality (Rev. Codes, secs. 3899, 3900). nor brought suit until after the lapse of five years, was estopped by his delay, under the sections *supra*, from ques-

tioning the proceedings leading to the sale, and barred by either section 6449 or section 6451, Revised Codes, from prosecuting the action.

[As to estoppel by acquiescence of silence, see notes in 57 Am. St. Rep. 429; 10 Am. St. Rep. 22.]

Same—Laches—Notice.

2.   Until plaintiff irrigation district had notice of defendant's diversions of its impounded waters, it could not be charged with permitting him to do so, and hence with laches in failing to institute action against him.

*Appeal from District Court, Ravalli County, in the Fourth Judicial District; J. M. Clements, a Judge of the First District, presiding.*

ACTION by the Canyon Creek Irrigation District against Van D. Martin. From a judgment for plaintiff, the defendant appeals. Affirmed.

*Messrs. Wagner & Taylor,* for Appellant, submitted a brief; *Mr. J. D. Taylor,* argued the cause orally.

When a water right is once acquired, it attaches to the land as an appurtenance, and where, as in the instant case, a number of persons associated themselves together and formed a corporation for mutual benefit, the character of their holdings was not thereby changed so as to divest a nonconsenting stockholder of all his rights therein. (*Cache La Poudre Irr. Co.* v. *Larimer & Weld Reservoir Co.,* 25 Colo. 144, 71 Am. St. Rep. 123, 53 Pac. 318.) The only practical right resulting from membership in such a corporation is to have furnished to its members water for irrigation purposes, in proportion to the amount of stock held by them. (*Miller* v. *Imperial W. Co.,* 156 Cal. 27, 24 L. R. A. (n. s.) 372, 103 Pac. 227.) We think there can be no contention but that each share of stock of the Canyon Creek Reservoir Company represented a proportionate part of the water rights and the reservoir of the company. (See *Richey* v. *East Redlands Water Co.,* 141 Cal. 221, 74 Pac. 754.) The ownership of the property is in the stockholders. The rights of the company are limited to regulating and controlling the supply and supervising the works. (*Fuller* v. *Azua Irr. Co.,*

138 Cal. 204, 71 Pac. 98; *Rocky Ford Canal etc. Co.* v. *Simpson,* 5 Colo. App. 30, 36 Pac. 638; *Wadsworth Ditch Co.* v. *Brown,* 39 Colo. 57, 88 Pac. 1060.)

*Mr. E. C. Kurtz* and *Mr. Geo. T. Baggs,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE SANNER delivered the opinion of the court.

The plaintiff, a duly created irrigation district of the state of Montana, claiming ownership as against the defendant of certain reservoirs in Ravalli county, with the waters impounded thereby, and alleging that the defendant has interfered and is interfering with its property by diverting and using its said waters, brought this suit to enjoin him from continuing so to do.   The answer as filed sought to present a general denial and an affirmative defense to this effect: That the Canyon Creek Reservoir Company, a corporation, acquired a site and thereon built a reservoir for the storage of water to irrigate the lands of its stockholders; that the reservoir so built is "the same reservoir mentioned in plaintiff's complaint"; that the defendant was and is a stockholder in said corporation, as also were certain other persons named in the answer; that said other persons on or about June 5, 1909, caused a meeting of the stockholders of said corporation to be held for the purpose of selling and disposing of all its assets, and at said meeting, by voting large amounts of the stock of said corporation theretofore unlawfully issued to them, or to some of them, and against the defendant's protest, adopted a resolution by the terms of which Miles Romney and William Tate became the purchasers of all the assets of said corporation; that Romney and Tate conveyed the same to the plaintiff herein; that said sale is void as against the defendant, and did not operate to divest him of his share, as represented by his stock in said company, in its reservoir and waters, which waters are necessary to the irrigation of his lands and have by use since become appurtenant to his lands.   A reply was filed admitting, among other things, the sale to Rom-

ney and Tate of all the assets of said reservoir company and
the purchase thereof by the plaintiff district from said Romney
and Tate, but denying the allegations upon which the illegality
of said transactions is sought to be based, and pleading affirma-
tively that litigation of the matters and things alleged by the
defendant is barred by the provisions of sections 6449 and 6451,
Revised Codes.

The case coming on for trial, the plaintiff moved "for judg-
ment on the pleadings as to the affirmative defenses contained
in the defendant's answer," which motion was by the court sus-
tained. Thereupon evidence was introduced tending to show
that the defendant had interfered, and was interfering, as
alleged, with the water supplied by plaintiff's reservoirs, in-
cluding the reservoir which had originally been constructed by
the reservoir company, but which in 1909 or 1910 had been
reconstructed and made more serviceable by the plaintiff. It
also conceded that the defendant owned certain shares of stock
in the reservoir company and that he protested against the sale
of its assets. For himself the defendant testified, suggesting
that one or two of the members of the plaintiff district had con-
sented to his using the water after the plaintiff's commissioner,
by whom he had been forbidden so to do, had left, and he offered,
but was not allowed, to support his right, independently of such
consent, by offering in evidence the articles of incorporation
of the reservoir company and certain of its by-laws. The effect
of these by-laws is to limit the right to hold stock in the com-
pany to persons owning lands irrigable by its waters, and to
such persons only in proportion to the irrigable acreage held by
them respectively. At the close of all the evidence the court
ordered a perpetual injunction to issue as prayed, and, a decree
being entered accordingly, this appeal therefrom was taken.

The argument for reversal is this: That the offered evidence
shows the reservoir company to have been an organization
mutual in character, whose functions were merely those of a
carrier of water to its own members exclusively, such members
being in law tenants in common of the reservoir, waters and

ditches nominally held by the company; that the defendant's interest in said property was in the nature of an easement appurtenant to his lands, and of it he could not be divested by any sale of the company's assets made without his consent; that he could not be barred by either of the sections pleaded in the reply, because the plaintiff had since its organization and alleged purchase of the reservoir company's assets in 1909 permitted the defendant to divert such water, and "so long as his asserted rights were not molested, he had no occasion to institute an action against the district to enforce his rights in the reservoir''; and finally, that the plaintiff itself is estopped by laches to assert any claims hostile to the defendant.

There is no merit in any of this. Whether, if the reservoir [1] company were a mutual concern with functions only of carriage, the effect of membership in it would be as supposed by the defendant, we are not called upon to say, because the articles of incorporation of the reservoir company negative any such notion of its character. They show that it has a capital stock, commercially valued, and they say: "The purposes and objects for which said company is formed are: To supply water to the public; to construct canals, ditches, flumes and other works for conveying water and reservoirs for storing same; to dig ditches, build flumes and run tunnels; to purchase, hold, develop, improve, use, lease, sell, convey or otherwise dispose of water and water powers and right and the sites thereof and lands necessary or useful therefor, for the industries and habitations arising or growing up or to arise or grow up in connection with or about the same; to carry on any branch of business designated to aid in the industrial and productive interests of the country and the developments thereof, or of one or more of the branches of business herein mentioned in connection with and as a part of the purposes and objects above mentioned for which this company is formed to purchase, develop, acquire, buy by appropriation or otherwise, hold, lease, mortgage, sell and convey water, water rights, water privileges, rights of way, pipes, flumes and all similar property; to construct and operate

ditches, dams, flumes, canals, reservoirs and other means of collecting and utilizing water for irrigation, power, transmission of power, transportation and other useful or beneficial purposes; to sell, lease, give and supply water for domestic, mechanical, agricultural, irrigation, power and other purposes.'' This fixes and determines the character of the reservoir company; in it there is nothing suggestive of mutuality, nothing to indicate that the functions of the corporation are confined to the carriage of water to its members so as to make them, and not the corporation, the owners of its ostensible assets. If it be supposed, however, that this is made to appear from the by-laws offered but not received in evidence, the answer is that not in this way can the essential nature of a corporation be affected. The reservoir company in which the defendant held or holds shares of stock was an ordinary corporation for profit, with a scope almost as wide as language can make it, with ownership of and title to its assets, and with power to sell them all upon a proper vote of its stockholders. (Rev. Codes, secs. 3897–3900.) It made such sale, and if as a preliminary in so doing, frauds, misfeasance or violations of such of its by-laws as were legal occurred, and these acts constituted an invasion of defendant's right as a stockholder, he could have effectually assailed them if he had acted in time and in a proper proceeding. According to his own pleading, however, he has delayed too long (Rev. Codes, secs. 3899, 3900, 6449, 6451), and the transfer must be considered, as against him, entirely valid and efficient.

It results, then, that by the resolution of June 5, 1909, the reservoir company became divested of the reservoir with its site and with any waters impounded or to be impounded thereby, and thereafter the plaintiff district became the owner.

There is nothing in either pleading or proof to suggest that [2] during any of the period intervening between that time and August, 1914, the plaintiff's diversions of the waters, if they occurred, were such as to challenge its notice. It therefore cannot be charged with laches, for, to paraphrase the language of the defendant himself, until injury occurred it had no

occasion to institute an action against him to enforce its right in the reservoir or in the waters in question.

The decree appealed from is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.

Rehearing denied June 29, 1916.